IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MARK GRAVES, ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:12-cv-21 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DAVID AUSTIN and DANVILLE ) | By: Hon. Jackson L. Kiser |
| POLICE DEPARTMENT, ) | Senior United States District Judge |
| ) | |
| Defendants. ) | |

Before me are Defendant David Austin's Second Motion for Judgment on the Pleadings [ECF No. 22] and Defendant Danville Police Department's ("DPD") Motion to Dismiss for Failure to State a Claim [ECF No. 24]. *Pro se* Plaintiff Mark Graves was served with both Motions, as well as a notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), but he did not respond. The matter was set for oral argument on November 29, 2012, but Plaintiff did not appear to defend against the Motions. Defendants elected to submit their respective Motions on the briefs, and the matter is now ripe for decision. For the reasons stated below, I will construe Defendant Austin's Motion under Rule 12(c) as a motion under Rule 12(b)(6) and **GRANT** the Motion. I will likewise **GRANT** Defendant DPD's Motion to Dismiss.

**STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

Plaintiff is currently dating a young woman named Shaquanda Whittle. Ms. Whittle and Defendant David Austin are the parents of a 14-month-old child. In addition to being the father of Ms. Whittle's child, Defendant Austin is also a police officer with Defendant DPD.[2]

---

[1] The majority of these facts are taken from Plaintiff's original *pro se* Complaint. Although I dismissed the Complaint and it is, therefore, a legal nullity for the purposes of these motions, the factual details contained in Plaintiff's Amended Complaint are minimal. In order to flesh out the facts surrounding Plaintiff's claim, I will take the facts from all sources for the purposes of this recitation only. All the facts in the Amended Complaint *only* are assumed to be true for the purposes of the following analysis.

According to the original Complaint, on October 18, 2010, Defendant approached Plaintiff "on several occasions" and demanded that Plaintiff stay away from Ms. Whittle. (Compl. ¶ 1.) "On late Sunday night,"[3] at approximately 12:05 a.m., Defendant approached Plaintiff's home "in police uniform," knocked on the door, and asked for Plaintiff. (Id.) Ms. Whittle was at his house as well. (Id.) When Defendant asked for Plaintiff, Plaintiff was "afraid of this officer . . ." (Id.) He seeks $5,000,000.00 in damages for "harassment, threatening, stocking [sic], slandering, and intimidation of [his] person in violation of [his] civil rights." (Id.) Plaintiff claims Defendant "continue[s] to promote the aforementioned allegations against [him]." (Id.) The original Complaint is titled, "1983 CIVIL COMPLAINT," and the civil cover sheet attached to the Complaint lists "1983 Civil Rights Complaint," under the section headed, "Cite the U.S. Civil Statute under which you are filing."

Plaintiff also included a copy of the City of Danville Police Department Citizen Complaint and Inquiry Form with his original Complaint. (Compl. Ex. 1.) In that document, he stated that Defendant "has also attempted to assinate [sic] [his] character in the community." (Id.) He also alleged that Defendant did not approach his residence (see Compl. ¶ 1), but that he approached "the residence of Mr. Alfonza Lewis's home . . . ." (Compl. Ex. 1.) Although he did not expressly allege that Defendant was "stalking" him, he did request that the DPD "stop Officer Alston from approaching me, coming into my neighborhood and asking others about me, and from following me and Ms. Whittle." (Id.)

---

[2] The original Complaint refers to "Officer Alston." The Complaint has been amended by court order to reflect Defendant's actual name, David Austin. (See Order Amending Complaint, July 20, 2012 [ECF No. 5].)

[3] October 18, 2010, was a Monday. If Defendant approached Plaintiff's home after midnight on Sunday night, the date would actually be Monday.

Plaintiff filed his original Complaint alleging a cause of action under 42 U.S.C. § 1983. (See Compl. [ECF No. 3].) Defendant filed an Answer on August 16, 2012, wherein he admitted he has a child with Ms. Whittle and that he approached a house in uniform looking for his girlfriend and daughter, but denies asking for Plaintiff at the house. (See Ans. ¶ 1a-f.) Plaintiff also set forth in his Answer various affirmative defenses, including the allegation that the Complaint "fails to state a claim upon which relief can be granted," pursuant to Federal Rule of Civil Procedure 12(b)(6). (See id. ¶ 5.) The next day, Defendant filed a Motion to Dismiss for Failure to State a Claim. [ECF No. 10.] I granted the Motion, but gave the Plaintiff leave to amend his Complaint. He did so on October 15, 2012. (See Am. Compl. [ECF No. 21].)

In his Amended Complaint, Plaintiff adds DPD as a defendant, "stating said police department has failed to properly supervise and control defendant in lieu of his official duties." (Am. Compl. ¶ 1.) Plaintiff also makes the conclusory statements: "Defendant Austin acted outside the scope of his authority by constantly and continually threatening, intimidating, and harassing plaintiff;" "The Danville Police Department refuses to turnover [sic] records that proves said chief of police ordered defendant Austin seek counseling for said acts stated in this Complaint;" and "Plaintiff is entitled to be free from said acts as stated herein which infringes upon his Constitutional right." (Am. Compl. ¶¶ 1, 3.) Plaintiff accuses the DPD of engaging in a "coverup to prevent plaintiff from prevailing in the case." (Id. ¶ 4.) The Plaintiff requests a trial and that DPD be forced to turn over the requested evidence.

Plaintiff also attached five exhibits to his Amended Complaint. The first is a letter from Chief of Police Col. Philip A. Broadfoot, wherein Col. Broadfoot refused to provide Plaintiff with requested information because: "[s]uch documents, if they exist, are exempt from disclosure

pursuant to Section 2.2-3706 F11(ii) [sic] of the Code of Virginia."[4] (Am. Compl. Ex. A.) The other four are citations Plaintiff received at 8:30 a.m. on June 12, 2012, from Officer L.D. Land. Plaintiff was cited for: possessing and displaying a suspended operator's license; driving on a suspended operator's license; insufficient tire tread; and not wearing a seat belt.[5] (See Am. Compl. Exs. B, C, D, E.) Plaintiff does not make any mention of the citations in his Amended Complaint.

After receiving Plaintiff's Amended Complaint, Defendant Austin moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), despite failing to file an Answer to the Amended Complaint. See FED. R. CIV. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). Defendant DPD moved to dismiss the complaint under Rule 12(b)(6), arguing that it is *non sui juris*. The clerk sent Plaintiff a Roseboro notice on October 29, 2012; he did not file a response.

---

[4] Va. Code Ann. § 2.2-3706(F)(11) (2012) states:

> The following records are excluded from the provisions of this chapter, but may be disclosed by the custodian, in his discretion, except where such disclosure is prohibited by law:
> . . .
> 11. Records of (i) background investigations of applicants for law-enforcement agency employment, (ii) administrative investigations relating to allegations of wrongdoing by employees of a law-enforcement agency, and (iii) other administrative investigations conducted by law-enforcement agencies that are made confidential by law.

Col. Broadfoot offered no analysis as to how "a copy of a call [Plaintiff] made . . . in reference to an issue with Cpl. Austin," or "a copy of Cpl. Austin's emails to the police department about you," qualify for exclusion under this Code section. (See Am. Compl. Ex. A.)

[5] Under the Virginia Code, an officer may not effectuate a stop on a driver for not wearing a seat belt; it is a secondary offense. See VA. CODE ANN. § 46.2-1094(F) (2012) ("No citation for a violation of this section shall be issued unless the officer issuing such citation has cause to stop or arrest the driver of such motor vehicle for the violation of some other provision of this Code or local ordinance relating to the operation, ownership, or maintenance of a motor vehicle or any criminal statute."). Plaintiff does not allege, as he did at oral argument on the first Motion to Dismiss, that Defendant Austin had friends on the force follow and stop Plaintiff. The nature of the citations, however, strongly suggests that the stop was improper. Nevertheless, Plaintiff has not pled these allegations in any *pleading* before this Court, so I may not consider them.

- 4 -

## **STANDARD OF REVIEW**

As an initial matter, *pro se* complaints are held to "'less stringent standards than the formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 149. In determining facial plausibility, I must accept all factual allegations in the complaint as true. Id. at 1949. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." FED. R. CIV. P. 12(c). A motion under Rule 12(c) is reviewed under the same standards as a motion under Rule 12(b)(6). See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The Sixth Circuit has advised:

> The standard of review for entry of judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review

> for dismissals based on failure to state a claim under Rule 12(b)(6); the difference between the two rules is simply the timing of the motion to dismiss.  For a dismissal under Rule 12(b)(6), the moving party must request judgment in a pre-answer motion or in the answer itself, whereas a motion for dismissal under Rule 12(c) may be submitted after the answer has been filed.

Jackson v. Heh, Case No. 98-4420, 2000 WL 761807, at *3 (6th Cir. June 2, 2000) (per curiam) (unpublished).  A motion under Rule 12(b)(6) that is filed *after* an answer may be treated as a motion under Rule 12(c), "since the two basically serve the same function and doing so allows courts to reach the same judicially efficient answer."  In re Wimbrow, Bankruptcy No. 11-12246(BLS), 2012 WL 3069527, at *1 (Bankr. D. Del. July 27, 2012) (internal quotation omitted).  Accord Edwards, 178 F.3d at 243.  A district court may also rule on a motion for judgment on the pleadings under Rule 12(c) *before* the pleadings are closed by converting it to a motion to dismiss under Rule 12(b)(6).  See New York State United Teachers v. Thompson, 459 F. Supp. 677, 680 (N.D.N.Y. 1978) (deciding a 12(c) motion filed before the answer as a motion under Rule 12(b)); Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1030 (D. Tenn. 2003).

## ANALYSIS

### I.     Defendant DPD's Motion to Dismiss

Defendant DPD correctly argues that it is *non sui juris* and thus not amenable to suit. "DPD has no existence apart from the City of Danville, and therefore may not be sued directly." Shelton v. Danville Police Department, et al., Case No. 4:11cv00045, 2012 WL 5464953, at *3 (W.D.V.A. May 8, 2012).  "In Virginia, an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued . . . . Since the [Danville] Police Department has no legal existence separate and apart from [the City of Danville], and [since] the Code of Virginia does not provide that it can be sued as a separate

entity, [Danville] Police Department is not capable of being sued." Muniz v. Fairfax County Police Dep't., No. 1:05-cv-00446, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005)).  Because DPD may not be sued directly for its failings, Plaintiff has failed to state a cause of action against DPD, and his suit must be dismissed against that defendant.

**II.    Defendant Austin's Motion for Judgment on the Pleadings**

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983 (2012).  To state a claim for relief under § 1983, Plaintiff must demonstrate that Defendant's unlawful actions "were perpetrated under color of state law." Id.; see Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003); see also Butler v. Sheriff of Palm Beach County, et al., 685 F.3d 1261, 1265 (11th Cir. 2012).  "Section 1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer . . . . [T]he statute covers only those deprivations committed 'under color any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.'" Butler, 685 F.3d at 1265.  "The dispositive question is whether the defendant was exercising the power [he] possessed based on state authority or was acting only as a private individual." Id.  "Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." Screws v. United States, 325 U.S. 91, 111 (1945).

"If the substance of § 1983 is not to be substantially eviscerated, however, 'its ambit cannot be a simple line between States and people operating outside formally governmental organizations.'" Rossignol, 316 F.3d at 523 (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)). "Section 1983 therefore includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" Id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Because "there is no specific formula for defining state action" under this standard, "the question of what is fairly attributable to the State 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" Hicks v. S. Md. Health Sys. Agency, 737 F.2d 399, 402 n.3 (4th Cir. 1984) (internal citations omitted); see also Rossignol, 316 F.3d at 523 (quoting Brentwood Acad., 531 U.S. at 295).

In the present case, nothing about Defendant's actions suggests he was able to undertake them as a result of his official status; he could have undertaken the same actions without the authority of the badge. Moreover, Plaintiff does not directly allege that Defendant arrested or detained him in any way—acts that could only have been perpetrated because he is a police officer. The only actions he alleges Defendant took are the same acts a private individual with the same disagreement could have taken. Defendant's purely private actions could not be "fairly treated as [actions] of the State itself." Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974).

In Butler v. Sheriff of Palm Beach County, the Eleventh Circuit was faced with an irate mother who found a young man, naked, in her daughter's closet. Butler, 685 F.3d at 1263. Apparently, the teenagers had "consented to do what young couples alone in a house have been consenting to do since the memory of man (and woman) runneth not to the contrary." Id. The mother of the young woman was a corrections officer at a "'boot-camp facility for minors' run

by the Palm Beach County Sheriff's Office." Id. When she found the young man in her daughter's closet, she held him at gun point, handcuffed him, called her supervisors to see if he could be arrested and charged, assaulted him, and allowed her husband to assault him before finally setting him free. See id. at 1263−64. Defendant sued, alleging a violation of § 1983, and the District Court dismissed the complaint under Rule 12(b)(6).

The Court of Appeals ultimately affirmed the District Court's dismissal of the case because the mother was able to undertake her tortuous conduct because she was an irate mother, *not* because she was acting with the authority the state had granted her. See id. at 1267. The fact that she used her state-issued gun and handcuffs and contacted the Sheriff's office did not establish that she acted on behalf of the state or with the authority of the state. Any irate mother could possess a firearm, and any irate mother could have called the local Sheriff's office to determine if any laws had been broken. See id. at 1267-78. Although she used her state-issued handcuffs to detain the young man, she was not making an arrest, and the handcuffs were "incidental, not essential," to the young man's detention. Id. As such, her actions did not rise to the level of state activity, and therefore were not under "color of law." The Court concluded by noting that, "[w]hat § 1983 seeks to prevent is the '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . .'" Id. at 1268 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)):

> Collier [the mother] was an angry parent who happened to be in uniform, have handcuffs, and a firearm, which she used for the private ends of assaulting and scaring a young man she caught in bed with her daughter. What she did do to [the young man] was not "made possible only because [she was] clothed with the authority of state law." Any other angry parent with a firearm in the house could have done what Collier did.

Id. at 1268-69 (quoting Dunwoody Homeowners Ass'n v. DeKalb Cnty., Ga., 887 F.2d 1455, 1460 (11th Cir. 1989).

The same is true of Defendant's actions. His alleged conduct was not "made possible only because [he was] clothed with the authority of state law;" any jealous ex-lover could have undertaken to frighten or intimidate his ex-girlfriend's new beau. Id. Even if the allegations in Plaintiff's Reply are considered—that he asked his police-officer friends tail Plaintiff when he was driving[6]—any citizen could request that police officers monitor an individual. Had Defendant stopped Plaintiff, placed him under arrest, or used some other authority that only a police officer could use, then Plaintiff might have stated a case under § 1983 against Defendant Austin. Absent such an allegation, however, this is a private action between private actors. In the absence of some alternate basis for federal jurisdiction, the Complaint does not state a claim upon which relief may be granted.

The only possible bases for allowing this matter to proceed are the exhibits attached to the Amended Complaint. At oral argument on the original Motion, Plaintiff asserted that Defendant Austin had his friends on the force stop and cite Plaintiff as a means of harassment. The four attached summonses offer support for that assertion, as the citations are all suspect unless an officer knew who Plaintiff was in advance.[7] Alternatively, the Chief of Police's

---

[6] Of note, Plaintiff does not allege in any pleadings that he was, in fact, tailed or followed by the DPD. He only alleges that an officer received "an email from defendant Austin informing Officer Land to look out for a gold Torus [sic] driven by [P]laintiff." (Pl.'s Reply ¶ 4.) Any citizen could ask a police officer to "look out" for a car. Although the Amended Complaint includes exhibits which show that Officer Land did, in fact, stop and cite Plaintiff for four code violations one morning, there is no reference to that in either Complaint. Moreover, even if there was, that would not state a § 1983 cause of action against *Defendant Austin*, because *Austin* did not effectuate the stop. At best, it may state a § 1983 cause of action against Officer Land.

[7] The four citations Plaintiff received on June 12, 2012, all suggest that Plaintiff was stopped without a valid reason. Three of the four citations—displaying a suspended operator's license, insufficient tire tread, and not wearing a seat belt—do not justify a traffic stop because: (1) the display comes after the stop; (2) a car's tire tread cannot be observed while the car is moving; and (3) seat belt violations are

response to Plaintiff's request for information is so lacking in authority as to suggest a concerted effort to block Plaintiff's access to records to which he may be entitled, and which may very well prove his allegations. Nevertheless, these actions do not state a cause of action against Defendant Austin. Because Officer Austin did not detain or arrest Plaintiff, he did not engage in any activity that would violate § 1983. At best, he asked another officer to do his bidding. Like the mother in Butler, any jealous ex-lover could undertake the same action—asking a police officer to harass someone. It is only the act of pulling Plaintiff over unconstitutionally or without authority that might constitute a violation of § 1983.

By the same token, DPD's failure to comply with the Virginia Freedom of Information Act or the federal Freedom of Information Act[8] are not a basis for asserting a claim against Defendant Austin. DPD's failure to comply would create a cause of action against the City, not Defendant Austin. As such, there is no basis to assert a claim of any sort against Austin.

### III.  CONCLUSION

Although I have great sympathy for Plaintiff's plight, as I suspect the Defendants are undertaking the actions alleged, there is simply no recourse for him in federal court on the bases of the facts alleged in either Complaint. Defendant DPD cannot be sued directly, and he has not stated any cause of action against Defendant Austin. For these reasons, both Motions must be granted, and the action dismissed from this Court.

---

secondary offenses, see supra note 5. Driving on a suspended license *could* justify a stop, but only if the arresting officer had probable cause to believe that Plaintiff was driving the car and the officer *knew* Plaintiff's license was suspended. That would be a very improbable scenario. Thus, the stop is suspect. Unfortunately for Plaintiff, he has not named Officer Land in this lawsuit, and Officer Land's actions do not justify a claim against Defendant Austin.

[8] This assumes, without deciding, that Plaintiff sought information to which he was entitled and properly requested the information consistent with the requirements of the relevant statutes.

The Clerk is directed to forward a copy of this Opinion and the accompanying Order to all parties and counsel of record.

Entered this 3rd day of December, 2012.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE